Filed 10/28/13  P. v. Salcido CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>GREGORY JIMENEZ SALCIDO,<br><br>    Defendant and Appellant. | B243568<br><br>(Los Angeles County<br>Super. Ct. No. KA095855) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Steven Blades, Judge.  Affirmed.

Patrick Morgan Ford, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Brendan Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Gregory Jimenez Salcido was convicted of attempted criminal threats and other offenses. He challenges his conviction for attempted criminal threats, contending that it fails for want of evidence, and that the trial court erred in providing information that the jury requested regarding the offense. We reject these contentions and affirm.

**RELEVANT PROCEDURAL HISTORY**

On December 23, 2011, an information was filed, charging appellant in count 1 with assault with a deadly weapon on Juan Sanchez (Pen. Code, § 245, subd. (a)(1)), in count 2 with assault by means likely to produce great bodily injury on Felipe Chavez (Pen. Code, § 245, subd. (a)(1)), in counts 3 and 5 with making criminal threats against Sanchez and Chavez (Pen. Code, § 422), and in count 4 with vandalism resulting in damages less than $400 (Pen. Code, § 594, subd. (a)).[1] Accompanying counts 3 and 5 were allegations that appellant personally used a handgun in committing the offense (§ 12022.5, subd. (a)). Appellant pleaded not guilty and denied the special allegations.

During the jury trial, the court granted appellant's motion to dismiss count 3 (§ 1118.1). The jury found appellant guilty as charged in counts 1 and 4. In addition, the jury found him guilty of attempted criminal threat against Sanchez, as a lesser included offense of count 5, and found the accompanying weapon use allegation to be true. The jury acquitted him on count 2. The trial court sentenced appellant to a total term of three years and eight months.

---

[1] All further statutory citations are to the Penal Code, unless otherwise indicated.

# FACTS

A. *Prosecution Evidence*

Felipe Chavez testified that in 2010, he rented a house from appellant located at 820 Ahern Drive in La Puente. In or about October 2010, appellant evicted him. Chavez began living on a nearby street, but had no contact with appellant until the underlying incident.

According to Chavez, on October 14, 2011, he parked his vehicle at his sister-in-law's house, which was near the house at 820 Ahern Drive. He left the vehicle there, and someone else gave him a ride to work. After work, he was dropped off at his sister-in-law's house. He left the key to his vehicle with his wife, who was visiting his sister-in-law, and walked toward his own residence.

As Chavez passed the house at 820 Ahern Drive, he saw appellant in the driveway. Appellant called Chavez a "wetback," and began punching him. When Chavez defended himself, appellant went to his garage to get a bat. Upon seeing the bat, Chavez ran toward his sister-in-law's house. Appellant followed Chavez, but was unable to catch him. Appellant then hit Chavez's vehicle repeatedly with his bat.

Chavez then saw Juan Sanchez, who lived across the street from Chavez's sister-in-law, speak to appellant. Appellant hit Sanchez with the bat, which drew Sanchez's family and Chavez's relatives out of their houses. Chavez decided to help Sanchez. He lunged at appellant, who dropped the bat and returned to the house at 820 Ahern Drive.

Chavez further testified that after appellant left, the onlookers became fearful because they believed that Sanchez had seen a gun. Chavez and his relatives entered his sister-in-law's house to protect themselves. Through a window, Chavez saw appellant return on a bicycle. Pointing alternately at

3

Sanchez's house and the house containing Chavez, appellant said something, and drew his finger horizontally across his neck.[2] Appellant then rode the bicycle back to his house. Appellant's remark and gesture made Chavez and his relatives fear for their safety.

Juan Sanchez testified that on October 14, 2011, he was standing in his driveway when he saw appellant striking Chavez's vehicle with a bat. When Sanchez asked why he was doing so, appellant hit him with the bat. Chavez tried to aid Sanchez and began fighting with appellant. Appellant then walked back toward 820 Ahern Drive with the bat.

After appellant left, Sanchez and Chavez talked in front of Sanchez's house. Sanchez soon saw appellant approaching with a younger man, who was carrying a pistol. When appellant took the pistol from the younger man, Sanchez told Chavez that he should go inside his sister-in-law's house for his safety. According to Sanchez, appellant lifted the pistol toward the sky and said that he was going to kill "[b]oth of us." The remark made Sanchez feel "not safe," because he did not know whether appellant "was going to come against us."

Sanchez further testified that appellant went back to 820 Ahern Drive, and in less than two minutes, returned on a bicycle. Appellant rode the bicycle to the middle of the street between Sanchez's house and the house of Chavez's sister-in-law, pointed at the houses, and drew his hand across his neck. Sanchez heard no remark from appellant, but understood his gesture to mean that "he was going to kill us." Sanchez's wife called the police.

---

[2] Although Chavez initially testified that appellant said, "You'll pay for this," he later acknowledged that he did not hear what appellant had said, and did not know whether appellant spoke English or Spanish when he made the remark.

4

Investigating officers found a baseball bat and a pistol in the house at 820 Ahern Drive. The gun belonged to appellant's son, Nico.

B. *Defense Evidence*

Appellant testified that after he evicted Chavez for nonpayment of rent, he and his family moved into the house at 820 Ahern Drive. During the eviction process, Chavez was angry and repeatedly threatened appellant. The following year, appellant never saw Chavez in the neighborhood, although Chavez once made an angry gesture to him while they were both in their vehicles outside the neighborhood.

Appellant further testified that on October 14, 2011, while talking to Manuel Ruiz in front of the house at 820 Ahern Drive, he saw a vehicle in which Chavez was a passenger. After the vehicle parked near Sanchez's house, Chavez walked up to appellant and punched him. In self-defense, appellant grabbed a bat from his garage, but did not hit Chavez with it. Appellant accidently dropped the bat, and Chavez threw it away.

Appellant further testified that Chavez retreated up the street toward Sanchez's house while taunting appellant. Appellant followed him, and at some point, retrieved the bat. When they arrived at Sanchez's house, Sanchez hit him, causing the bat to fall from his hand. After the fight ended, appellant picked up the bat as he and Ruiz walked back to 820 Ahern Drive. In a fit of anger, he hit the vehicle parked near Sanchez's house with the bat.

Appellant further testified that when he approached 820 Ahern Drive, he saw Nico at the front door, holding a gun. According to appellant, he took the gun from Nico, determined that it was locked and unloaded, gave it back to Nico, and told him to put it back in the house. In order to obtain the license plate number of

5

the vehicle parked near Sanchez's house, appellant rode a bicycle up the street, made a U-turn, and returned to his house. Appellant denied making any threatening remarks or gestures while riding the bicycle.

Manuel Ruiz testified that on October 14, 2011, he was talking to appellant in front of appellant's house when he saw Sanchez drive by in a van containing Chavez as a passenger. Chavez gave Ruiz an "angered look." After the van parked up the street, Chavez approached appellant and punched him, thereby initiating a fist fight between them. During a pause in the fight, appellant took a bat from his garage in order to defend himself. Appellant brandished the bat, but did not hit Chavez with it. After a few moments, appellant accidently dropped the bat. Chavez grabbed the bat and threw it away.

Ruiz further testified that appellant and Chavez moved along the street as they fought. When they arrived at Sanchez's house, Sanchez kicked appellant and joined in the fight. According to Ruiz, appellant defended himself against both men. When the fight ended, Ruiz walked with appellant back to appellant's house, where Ruiz saw Nico.

C. *Rebuttal*

Los Angeles County Sheriff's Department Detective Alfredo Gomez testified that after the incident, he interviewed Ruiz and appellant. Appellant told Gomez that when Chavez and another man attacked him, he grabbed a bat and chased Chavez up the street. Appellant denied hitting the vehicle parked near Sanchez's house. Appellant further maintained that after the chase, he first returned to his house and then went to Sanchez's house, where he held up his cell phone and yelled that he intended to call the police. Appellant denied taking a gun from his house.

6

Los Angeles County Sheriff's Department Sergeant Tim Jimenez testified that on October 14, 2011, after the incident, appellant complained only of high blood pressure, and mentioned no other injuries.

## DISCUSSION

Appellant challenges his conviction for an attempted criminal threat, arguing (1) there was insufficient evidence to support the conviction, and (2) the trial court erred in responding to a question from the jury regarding the elements of the offense. For the reasons discussed below, we reject these contentions.

### A. *Attempted Criminal Threat*

We begin by examining the offense of attempted criminal threat. Generally, "[a]n attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission." (§ 21a.) Here, the underlying crime is criminal threat, as defined in section 422.[3] For analytic purposes, our Supreme Court has generally divided that crime into five elements. (*In re George T.* (20004) 33 Cal.4th 620, 630 (*George T.*); *People*

_____

[3] Subdivision (a) of section 422 provides: "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison."

*v. Toledo* (2001) 26 Cal.4th 221, 227-228 (*Toledo*).)  To prove the offense, the prosecution is obliged to establish "(1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat -- which may be 'made verbally, in writing, or by means of an electronic communication device' -- was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances.  [Citation.]"  (*Toledo*, *supra*, 26 Cal.4th at pp. 227-228.)

The leading case regarding attempted criminal threat is *Toledo*.  There, following a domestic dispute, the defendant was charged with making criminal threats to his wife, and assault with a deadly weapon on his wife and a neighbor. (*Toledo*, *supra*, 26 Cal.4th at pp. 224-226.)  Although the wife told investigating officers that the defendant's threats to her placed her in fear, at trial she denied that they did so.  (*Id*. at p. 225.)  After the jury received instructions on criminal threat and attempted criminal threat, it found the defendant guilty of the latter offense.  (*Id*. at p. 226.)  On appeal, the defendant maintained that there is no such crime as attempted criminal threat, arguing, inter alia, that it would improperly subject speech protected by the First Amendment of the United States Constitution to punishment.  (*Toledo*, *supra*, at pp. 226, 235.)

8

In rejecting the contention, our Supreme Court examined the origins of the crime of criminal threat, described the specific intent required for attempted criminal threat, and identified some situations that would support that offense. (*Toledo*, *supra*, 26 Cal.4th at pp. 227-235.) As the court noted, the former version of section 422, which defined the crime of terrorist threat, made it an offense to willfully threaten a crime that would result in death or great bodily injury, with the specific intent to terrorize another person, thereby causing that person "'reasonably to be in sustained fear for his or [her] or their immediate family's safety . . . .'" (*Toledo*, *supra*, at p. 228, quoting former § 422.) In *People v. Mirmirani* (1981) 30 Cal.3d 375, 381-388, the Supreme Court held that former section 422 was void for vagueness in violation of the due process requirements of the California Constitution. The plurality opinion further stated that punishment may be imposed on a threat without contravening the First Amendment, provided that the threat "'on its face and in the circumstances in which it is made . . . is so unequivocal, unconditional, immediate and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution . . . .'" (*People v. Mirmirani, supra,* 30 Cal.3d at p. 388, fn. 10 [plur. opn., of Bird, C.J.], quoting *U.S. v. Kelner* (2d. Cir. 1976) 534 F.2d 1020, 1027.)

In *Toledo*, the Supreme Court observed that the Legislature, in enacting the current version of section 422, incorporated this restriction in element (3) of the offense, and thus imposed punishment only on threats beyond the protection of the First Amendment. (*Toledo*, *supra*, 26 Cal.4th at pp. 229, 233.) Generally, such threats are identified by reference to a "reasonable person" standard: "'"When a reasonable person would foresee that the context and import of the words will cause the listener to believe he or she will be subjected to physical violence, the threat falls outside First Amendment protection."'" (*Id*. at p. 233, quoting *In re*

9

*M.S.* (1995) 10 Cal.4th 698, 710, italics omitted.)  Under this standard, speech satisfying the "unequivocal . . . threat" requirements of element (3) ordinarily "falls outside the protection of the First Amendment." (*Ibid*.)

In affirming the existence of attempted criminal threat, the Supreme Court defined the specific intent required for the offense, and identified "some of the most common situations" supporting its occurrence. (*Toledo*, *supra*, 26 Cal.4th at pp. 230-231, 234.)  The court stated: "[I]f a defendant takes all steps necessary to perpetrate the completed crime of criminal threat by means of a written threat, but the crime is not completed only because the written threat is intercepted before delivery to the threatened person, the defendant properly may be found guilty of attempted criminal threat.  Similarly, if a defendant, with the requisite intent, orally makes a sufficient threat directly to the threatened person, but for some reason the threatened person does not understand the threat, an attempted criminal threat also would occur.  Further, if a defendant, again acting with the requisite intent, makes a sufficient threat that is received and understood by the threatened person, but, for whatever reason, the threat does not *actually* cause the threatened person to be in sustained fear for his or her safety even though, under the circumstances, that person reasonably could have been placed in such fear, the defendant properly may be found to have committed the offense of attempted criminal threat." (*Id*. at p. 231.)

Turning to the underlying action, the Supreme Court determined that the defendant's conviction for attempted criminal threat did not contravene the First Amendment. (*Toledo*, *supra*, 26 Cal.4th at p. 235.)  The court observed that the jury reasonably could have found that the prosecution established the elements of the offense of criminal threat, with the exception of element (4), that is, the "sustained fear" requirement. (*Ibid*.) The court thus concluded that the

defendant's conviction "was not based upon constitutionally protected speech." (*Ibid*.)

Following *Toledo*, at least one appellate court has held that a conviction for attempted criminal threat is proper when the evidence establishes all but element (4) of the elements of criminal threat. In *In re Sylvester C.* (2006) 137 Cal.App.4th 601, 604-605 (*Sylvester C.*), a petition was filed charging a minor with criminal threat. At the hearing on the petition, evidence was presented that the minor made a serious and sincere threat to kill another person, but no evidence was submitted to show that the victim experienced sustained fear as a result of the threat. (*Id*. at pp. 605-609.) The juvenile court nonetheless found the criminal threat allegation to be true. (*Id*. at p. 604.) In view of the gap in the evidence, the appellate court modified the finding to reflect that the juvenile's offense was attempted criminal threat. (*Id*. at pp. 610-611.)

B. *Substantial Evidence*

Appellant contends his conviction for an attempted criminal threat against Sanchez fails for want of substantial evidence. He argues that there was insufficient evidence of any verbal remark satisfying the "unequivocal . . .threat" requirement of element (3). We disagree.[4]

---

[4] "In determining whether the evidence is sufficient to support a conviction . . . , 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citations.] Under this standard, 'an appellate court in a criminal case . . . does not ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.' [Citation.] Rather, the reviewing court 'must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence -- that is, evidence which is reasonable, credible, and of solid value -- such that a reasonable trier of fact could find
*(Fn. continued on next page.)*

11

The terms "unequivocal," "unconditional," "immediate," and "specific," as used in the statement of element (3), do not impose unqualified requirements on threats actionable under section 422. (*People v. Bolin* (1998) 18 Cal.4th 297, 339-340.) As our Supreme Court has explained, "'unequivocality, unconditionality, immediacy and specificity are not absolutely mandated, but must be sufficiently present in the threat and surrounding circumstances to convey gravity of purpose and immediate prospect of execution to the victim.'" (*Id.* at p. 340, quoting *People v. Stanfield* (1995) 32 Cal.App.4th 1152, 1157.) Furthermore, in view of *Toledo* and *Sylvester C.*, these requirements can be satisfied even though the victim does not, in fact, experience sustained fear as the result of the threat.

Generally, although wordless gestures themselves do not constitute criminal threats, they may show that the defendant's words or verbal sounds satisfy element (3). (*People v. Franz* (2001) 88 Cal.App.4th 1426, 1439-1449 (*Franz*).) Furthermore, a verbal threat may satisfy element (3) even though it does not specify the precise time and manner of its implementation. (*People v. Gaut* (2002) 95 Cal.App.4th 1425, 1432 [defendant's threat to kill woman satisfied element (3), even though he made threat while in jail, in view of his history of abusive conduct toward the woman]; *People v. Mosley* (2007) 155 Cal.App.4th 313, 316-322 [incarcerated defendant's threats to arrange for fellow gang members to follow jail guards home and kill them satisfied element (3), in view of defendant's violent conduct in jail].)

An instructive application of these principles is found in *Franz*. There, the defendant was charged with several offenses, including making criminal threats

_____

the defendant guilty beyond a reasonable doubt.' [Citation]." (*People v. Vy* (2004) 122 Cal.App.4th 1209, 1224.)

toward a specific individual.  (*Franz, supra,* 88 Cal.App.4th at pp. 1432-1434.) The evidence at trial showed that the defendant became angry at a former girlfriend and pushed his way into her apartment, where she and two male companions were present.  (*Ibid.*)  The defendant punched the former girlfriend and one of her companions.  (*Ibid.*)  In addition, when the police arrived and arrested the defendant, he looked at the second companion, held his finger to his lips, made either a "'sh'" or "'shush'" sound, and then ran his thumb across his throat.  (*Id*. at pp. 1436, 1444-1449.)  In affirming the defendant's conviction for making a criminal threat to the second companion, the appellate court concluded that the defendant's "sh" or "shush" sound and gestures satisfied element (3).  (*Id*. at p. 1438-1439.)

Here, there is ample evidence that appellant made a threat to Sanchez satisfying element (3).  Sanchez testified that after appellant hit him with a bat, appellant returned home, but soon reappeared with a younger man holding a gun. Appellant took the pistol from the younger man, lifted it toward the sky, and said that he was going to kill Sanchez and Chavez.  Appellant then went back to his house, and in less than two minutes, returned on a bicycle, rode between Sanchez's house and the house of Chavez's sister-in-law, pointed at the houses, and drew his hand across his neck.  Chavez testified that he saw the same gesture. This evidence supports the reasonable inference that appellant's verbal threat to kill was "on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the

threat." (§ 422, subd. (a).) In sum, there is sufficient evidence to support appellant's conviction for an attempted criminal threat against Sanchez.[5]

## C. *Jury Question*

Appellant contends the trial court erred in responding to a question from the jury regarding the offenses of criminal threat and attempted criminal threat. He argues (1) the court improperly permitted the prosecutor and defense counsel to answer the question, and (2) the answer provided was legally incorrect. As explained below, he has failed to show reversible error.

### 1. *Underlying Proceedings*

The trial court instructed the jury with CALCRIM No. 1300 regarding the offense of criminal threats and with CALCRIM No. 460 regarding the offense of attempted criminal threats.[6] After the jury's deliberations began, it sent the court a

---

[5] Appellant contends that Sanchez's testimony regarding his threat was too ambivalent to satisfy element (3). We disagree. Although Sanchez initially stated appellant said that he was going to kill "me" (i.e., Sanchez), he soon clarified that appellant said he was going to kill "us" (i.e., Sanchez and Chavez), and later reaffirmed that appellant made the latter threat. In view of *Franz*, this evidence was sufficient to establish element (3).

[6] As provided to the jury, CALCRIM No. 1330 stated in pertinent part: "To prove that the defendant is guilty of [a criminal threat], the People must prove that:

1. The defendant willfully threatened to unlawfully kill or unlawfully cause great bodily injury to Juan Sanchez;

2. The defendant made the threat orally;

3. The defendant intended that his statement be understood as a threat;

4. The threat was so clear, immediate, unconditional, and specific that it communicated to Juan Sanchez a serious intention and the immediate prospect that the threat would be carried out;

*(Fn. continued on next page.)*

14

note requesting "[the] definition and/or difference" between the two offenses. The trial court conferred with counsel, observed that the jury had asked "a good question," and stated that it was unsure how to answer. The prosecutor and defense counsel agreed that an attempted criminal threat occurred when one of the elements of criminal threat was not established. Furthermore, they agreed that the evidence at trial was potentially ambivalent regarding element (5), that is, whether Sanchez had experienced sustained fear. Following this discussion, the trial court decided to permit the prosecutor to inform the jury "how [it] could find an attempted criminal threat." In addition, the court afforded defense counsel an opportunity for argument if "he [felt] that he need[ed] to add something."

The prosecutor directed the jury's attention to CALCRIM No. 460, which stated that an attempted criminal threat occurred if the defendant "'took a direct but ineffective step toward committing the criminal threat,'" and "'intended to

---

5. The threat actually caused Juan Sanchez to be in sustained fear for his own safety; AND

6. Juan Sanchez's fear was reasonable under the circumstances."

As provided to the jury, CALCRIM No. 460 stated in pertinent part: "To prove that the defendant is guilty of [an attempted criminal threat], the People must prove that:

1. The defendant took a direct but ineffective step toward committing criminal threats;

AND

2. The defendant intended to commit criminal threats. [¶] A *direct step* requires more than merely planning or preparing to commit criminal threats or obtaining or arranging for something needed to commit criminal threats. A direct step is one that goes beyond planning or preparation and shows that a person is putting his or her plan into action. A direct step indicates a definite and unambiguous intent to commit criminal threats. It is a direct movement towards the commission of the crime after preparations are made. It is an immediate step that puts the plan in motion so that the plan would have been completed if some circumstance outside the plan had not interrupted the attempt."

15

commit the criminal threat.'" In view of these requirements, the prosecutor advised the jury to determine whether appellant satisfied the first three elements of criminal threat, which concerned "[appellant's] acts and what he did and what he said."[7] The prosecutor further stated that the potential for attempted criminal threat arose in connection with the remaining two elements of criminal threat, which concerned the aspects of the crime "specific to the victim." Those elements related to whether Sanchez experienced sustained fear, and whether that fear was reasonable under the circumstances. The prosecutor stated that an attempted criminal threat occurred if Sanchez did not experience sustained fear and all the other elements were satisfied, or alternatively, if Sanchez's fear was not reasonable and all the other elements were satisfied.

Turning to the "facts . . . given in this case," the prosecutor stated "Sanchez . . . was able to see the gun, he heard the threat, and that's what made him in fear [sic]. [¶] So . . . you have the ability to find the completed threat, but if you don't find . . . Sanchez had that sustained period of fear, . . . you can find [appellant] guilty of the attempted threat."

Defense counsel told the jury that the prosecutor "ha[d] explained it properly," but added that as a matter of "practical application," the jury "just ha[d] to look at [the requirement of sustained fear]," and determine "whether [Sanchez] was fearful."

---

[7] The prosecutor referred to the first four elements of criminal threat, as CALJIC No. 1300 subdivides the first three elements identified in *Toledo* into four elements. For simplicity, we modify the prosecutor's presentation to reflect the enumeration of elements in *Toledo*.

16

## 2. *Delegation of Response to the Jury Question*

Appellant contends the trial court contravened section 1138 in permitting the prosecutor and defense counsel to answer the jury question. As explained below, he has established no reversible error.

Generally, "[t]he trial court must instruct even without request on the general principles of law relevant to and governing the case. [Citation.] That obligation includes instructions on all of the elements of a charged offense. [Citation.]" (*People v. Cummings* (1993) 4 Cal.4th 1233, 1311.) Regarding this duty, section 1138 requires the court to respond to the jury's request for information regarding "any point of law" after its deliberations commence.[8] Under this provision. "the court must attempt 'to clear up any instructional confusion expressed by the jury.'" (*People v. Giardino* (2000) 82 Cal.App.4th 454, 465.) Thus, the court may not "figuratively throw up its hands and tell the jury it cannot help." (*People v. Beardslee* (1991) 53 Cal.3d 68, 97.) Nonetheless, the information to be provided to the jury is consigned to the court's discretion. (*Ibid.*)

Here, appellant maintains that the trial court, in permitting the prosecutor and defense counsel to respond to the jury's question, declined to assist the jury. We disagree. After the prosecutor and defense counsel agreed on an appropriate response to the jury's question, the trial court permitted them to communicate it to

---

[8]    Section 1138 provides: "After the jury have retired for deliberation, if there be any disagreement between them as to the testimony, or if they desire to be informed on any point of law arising in the case, they must require the officer to conduct them into court. Upon being brought into court, the information required must be given in the presence of, or after notice to, the prosecuting attorney, and the defendant or his counsel, or after they have been called."

the jury, rather than doing so itself. The jury thus received an answer to its question.

Furthermore, to the extent appellant contends that the court's procedure in answering the jury's question contravened section 1138, he has forfeited the contention, as defense counsel agreed to the procedure. (*People v. Barrios* (2008) 163 Cal.App.4th 270, 279.) However, we would reject appellant's challenge to the procedure if we were to address it. In *People v. Walker* (1957) 155 Cal.App.2d 273, 276, the prosecutor and defense counsel stipulated that the court clerk could read the instructions to the jury, notwithstanding the statutory requirement that the court do so (§ 1093, subd. (f)). The appellate court concluded that the stipulated procedure did not compel the reversal of the judgment, as there was no showing that the procedure was prejudicial. (*People v. Walker, supra,* at p. 276.) The same is true here. In sum, appellant has failed to show reversible error.

### 3.  *Adequacy of Response*

Appellant also contends the answer provided to the jury's question was legally incorrect. Pointing to *People v. Jackson* (2009) 178 Cal.App.4th 590 (*Jackson*), he argues that the jury was improperly informed that attempted criminal threats may be committed when all the elements of criminal threat are satisfied, with the exception of element (5), that is, the "reasonable fear" requirement. The crux of the contention is that no attempted criminal threat occurred unless Sanchez's sustained fear would have been reasonable under all the circumstances, had Sanchez experienced such fear.

We conclude that appellant has forfeited this contention. Defense counsel's express consent to a response to a jury question ordinarily works a forfeiture. (*People v. Ross* (2007) 155 Cal.App.4th 1033, 1048.) Thus, in *People v.*

18

*Rodrigues* (1994) 8 Cal.4th 1060, 1193, our Supreme Court held that the defendant failed to preserve his challenge to a response to a jury question because defense counsel proposed the response and consented to it. That is also what occurred here.

Moreover, as explained below, we would reject appellant's contention were we to examine it. In *Jackson,* the defendant became hostile when a married couple asked him to move out of a residence they owned, and was charged with two counts of criminal threats. (*Jackson, supra,* 178 Cal.App.4th at pp. 593-594.) Although the married couple told the investigating officer that the defendant had threatened them, the wife testified at trial that she heard no threats. (*Id*. at p. 595.) The jury found the defendant guilty on two counts of attempted criminal threats. (*Ibid*.)

On appeal, the defendant argued that the jury instructions on attempted criminal threats had omitted a purportedly necessary element, namely, the "reasonable fear" requirement of element (5) of criminal threats. (*Jackson, supra,* 178 Cal.App.4th at pp. 595-596.) The appellate court agreed, relying on three aspects of *Toledo*, namely, the description of the specific intent required for attempted criminal threat, the list of hypothetical situations supporting that offense, and the discussion of the "reasonable person" standard applicable to the definition of unprotected speech under the First Amendment. (*Jackson, supra,* at pp. 595-597.) Of these considerations, the court placed special emphasis on the third. (*Id*. at p. 597.) The court stated that the Legislature's intent in enacting section 422 was to limit punishment to unprotected speech, as delimited by the pertinent reasonable person standard. (*Jackson, supra,* at p. 597.) The court concluded: "Punishment for an attempted criminal threat must reach no further. By insisting that the intended threat be evaluated from the point of view of a

19

reasonable person under the circumstances of the case, we can [e]nsure that punishment will apply only to speech that clearly falls outside First Amendment protection." (*Id*. at p. 598.)

Had appellant preserved his contention of error, we would decline to follow *Jackson*.[9] *Toledo* neither imposed element (5) of criminal threat as a necessary element of attempted criminal threat, nor examined whether it should be imposed. Furthermore, as discussed below, to the extent *Toledo* provides guidance regarding that issue, it supports the contrary conclusion.

To begin, in explaining why section 422 targets only constitutionally unprotected speech, the Supreme Court focused on elements (1) through (3) regarding the defendant's conduct, especially the "unequivocal . . . threat" requirement of element (3). (*Toledo*, *supra*, 26 Cal.4th at pp. 233-234.) The court stated: "'[T]he state may penalize threats, even those consisting of pure speech, provided the relevant statute singles out for punishment threats falling outside the scope of First Amendment protection. [Citations.] . . . When a reasonable person would foresee that the context and import of the words will cause the listener to believe he or she will be subjected to physical violence, the threat falls outside First Amendment protection.'" ". . . [¶] In light of these principles, it is clear that the type of threat satisfying the criminal threat provisions of section 422 - - that is, a threat 'to commit a crime which will result in death or great bodily injury to another person . . . which, *on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of*

---

[9] The issue addressed in *Jackson* is currently before the Supreme Court in *People v. Chandler* (2012) 211 Cal.App.4th 114, review granted February 13, 2013, S207542 [rejecting *Jackson*].

20

*execution of the threat'* -- constitutes speech that falls outside the protection of the First Amendment. [Citations.]" (*Toledo*, *supra*, 26 Cal.4th at p. 233, italics omitted and added.)

In contrast, *Toledo* does not suggest that the "reasonable fear" requirement in element (5), viewed independently of element (3), ensures that section 422 targets only unprotected speech. Indeed, as noted in *Toledo*, the "reasonable fear" requirement was present in former section 422, which was constitutionally unsound. Rather, the principal provisions in the current version of section 422 that secure compliance with the First Amendment are the elements regarding the defendant's conduct, especially the "unequivocal . . . threat" requirement in element (3). For this reason, the "reasonable fear" requirement in section 422 appears to impose a supplemental requirement on the complete offense: even if a constitutionally unprotected threat causes sustained fear in the victim, the victim's fear also must be reasonable.

Our conclusion finds additional support from *George T*. There, a high school student was charged with making a criminal threat after writing poems a fellow student perceived as threats to her. (*George T., supra,* 33 Cal.4th at pp. 624-625.) When the juvenile court found the criminal threat allegation to be true, the high school student contended on appeal that his poems were subject to First Amendment protection. (*Id*. at p. 630.) The Supreme Court concluded that the contention presented a question of law subject to independent review, and determined that the poems were protected speech solely by reference to the "unequivocal . . . threat" requirements of element (3). (*Id*. at pp. 630-639.) In a footnote, the court stated: "We believe the elements of section 422, in particular the requirements that the communicator have the specific intent to threaten and that the threat be 'so unequivocal, unconditional, immediate, and specific as to

21

convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' coupled with independent review, adequately protect[] freedom of expression, as they have done in this case." (*George T.*, *supra,* at p. 638, fn. 9.)

The *Jackson* court seized on language in *Toledo* addressing the specific intent required for an attempted criminal threat. In defining the specific intent required for attempted criminal attempt, the Supreme Court stated that a defendant must specifically intend to threaten to commit an injurious crime "with the further intent that the threat be taken as a threat, under circumstances sufficient to convey to the person threatened a gravity of purpose and an immediate prospect of execution so as *to reasonably cause the person to be in sustained fear* for his or her own safety or for his or her family's safety." (*Toledo*, *supra*, 26 Cal.4th at pp. 230-231, italics added.) *Jackson* concluded that the italicized phrase in the definition imposed the "reasonable fear" requirement as an element of attempted criminal threat. In our view, the definition does not do so. Because the phrase "with the further intent" precedes the italicized phrase, the latter is plausibly interpreted as describing an aspect of the required subjective state, that is, an intent to act in such a way that will reasonably cause fear. As our Supreme Court has observed elsewhere, the specific intent for an attempted crime is usually combined with a belief that the circumstances permit the crime's completion. Thus, in *People v. Rojas* (1961) 55 Cal.2d 252, 257, the court identified the existence of certain attempted crimes based on the "hypothesis" that "the defendants had the specific intent to commit the substantive offense and . . . *under the circumstances as the defendants reasonably saw them*[,] they did the acts necessary to consummate the substantive offense[,] but because of circumstances

unknown to [the] defendants, essential elements of the substantive crime were lacking." (Italics added.)

*Jackson* also noted that the Supreme Court, in identifying situations supporting attempted criminal threat, described none in which the "reasonable fear" requirement was unsatisfied. (*Jackson, supra,* 178 Cal.App.4th at pp. 597-598.) However, the Supreme Court expressly focused only on "some of the most common" situations supporting attempted criminal threat, namely, situations in which the defendant engaged in all of the conduct required for criminal threat, and the only missing element was the victim's sustained fear. (*Toledo*, *supra*, 26 Cal.4th at pp. 221, 234.) These situations were apparently selected because they involved the satisfaction of the "unequivocal . . . threat" requirement in element (3) of criminal threat, and thus clearly involved unprotected speech, that is, threats "'a reasonable person would foresee'" as "'caus[ing] the listener to believe he or she will be subjected to physical violence . . . .'" (*Id.* at pp. 233-234, quoting *In re M.S., supra,* 10 Cal.4th at p. 710.) Because threats of that type which fail to satisfy the "reasonable fear" requirement of element (5) must be regarded as exceptional or rare, it is unsurprising that the "common" situations discussed in *Toledo* met that requirement.

However, even if *Jackson* was correctly decided, the error in the information provided to the jury was harmless. Appellant's contention is that the jury was offered two theories regarding how attempted criminal threat may be committed when elements (1) through (3) of criminal threat are satisfied: either the victim experienced no sustained fear (even though such fear would have been reasonable) or the victim's sustained fear was not reasonable. Under *Jackson*, the

23

second theory omitted the "reasonable fear" requirement of criminal threat, and thus would be legally unsound.[10]

In *People v. Chun* (2009) 45 Cal.4th 1172, our Supreme Court confronted a similar instructional error. There, the jury was instructed on second degree murder under two theories, the existence of malice and the felony-murder rule (predicated on the defendant's shooting at an occupied motor vehicle (§ 246)). (*People v. Chun, supra,* at pp. 1179-1180.) After concluding that as a matter of law, the felony-murder rule could not support the defendant's conviction for second degree murder, the Supreme Court stated that the instructional error was not prejudicial if "other aspects of the verdict or the evidence le[ft] no reasonable doubt" that the jury made the findings required for a guilty verdict under the legally correct theory. (*Id.* at pp. 1204-1205.) Applying this test, the court determined that the error was harmless, concluding that any juror who relied on the felony-murder rule instructions and thereby found that the defendant willfully shot at an occupied motor vehicle necessarily found that the defendant acted with malice. (*Ibid.*)

In view of *Chun*, the purported error here was not prejudicial. As noted above, the satisfaction of the "unequivocal . . . threat" requirement in element (3) of criminal threat ordinarily guarantees the satisfaction of the "reasonable fear" requirement of element (5) of criminal threat. Here, the evidence contained no suggestion of any special circumstances that might break the link between the

---

[10] The purported error here is subject to the rule propounded in *People v. Green* (1980) 27 Cal.3d 1, reversed on other grounds in *People v. Martinez* (1999) 20 Cal.4th 225, 234, and in *People v. Hall* (1986) 41 Cal.3d 826, 834, and *People v. Guiton* (1993) 4 Cal.4th 1116. Under the *Guiton-Green* rule, "if a jury is presented with multiple theories supporting conviction on a single charge and on review one theory is found legally defective, that is, the theory does not present a legally sufficient basis for conviction, *(Fn. continued on next page.)*

24

requirements. Sanchez testified that appellant threatened to kill him and Chavez, and the jury could not have convicted appellant of attempted criminal threat without crediting that aspect of Sanchez's testimony. For this reason, the jury could not find that element (3) was satisfied but element (5) was not. Indeed, although the prosecutor identified the second theory of attempted criminal threat -- that is, that Sanchez's sustained fear was not reasonable -- as a potential form of the offense, she focused exclusively on the first theory -- that is, the possibility that Sanchez experienced no sustained fear -- when she turned to "the facts . . . given in th[e] case." Similarly, defense counsel stated that as a matter of "practical application," the jury should look at the requirement of sustained fear and determine "whether [Sanchez] was fearful." Accordingly, there is no reasonable doubt that the jury found appellant guilty of attempted criminal threat under a legally correct theory. In sum, appellant has failed to show reversible error regarding the response to the jury's question.

---

reversal is required unless substantial reasons exist to find that the verdict was based on a legally valid theory." (*People v. Llamas* (1997) 51 Cal.App.4th 1729, 1740.)

## DISPOSITION

The judgment is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

MANELLA, J.

We concur:

EPSTEIN, P. J.

WILLHITE, J.

26